IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CORTEZ WILLIE SHIELDS,

                 Plaintiff,               OPINION AND ORDER

v.

                                            17-cv-266-wmc

BRITTANY B. KOCH,

                 Defendant.

    In a series of prior opinions, the court granted Shields leave to proceed on a claim against defendant Brittany B. Koch (now known and referred to as "Brittany Lindsley"), a mental health counselor employed by a private health care contractor that provides services at the Dane County Jail in Madison, Wisconsin. Shields alleges that Lindsley violated his Eighth Amendment rights by requiring him to talk about his mental health needs through a food slot within earshot of other inmates.[1] For the reasons that follow, the court concludes that a reasonable jury could not find that defendant acted with deliberate indifference toward plaintiff's mental health needs. Accordingly, the court will grant defendant's motion and direct entry of judgment in her favor.

UNDISPUTED FACTS[2]

    Defendant described in great detail plaintiff's mental health treatment in 2016

---

[1] Plaintiff was also granted leave to proceed against a number of other individuals based on initials, but plaintiff was unsuccessful in identifying any other individuals and, therefore, Lindsley is the only defendant.

[2] Unless otherwise noted, the court finds the following facts undisputed and material, as viewed in the light most favorable to plaintiff as the non-moving party. While plaintiff did not respond to

while incarcerated at the Dane County Jail. While the court has considered plaintiff's extensive medical record for context, its focus is on defendant Lindsley's involvement in plaintiff's care, as is this factual summary.

Plaintiff Cortez Shields pleaded guilty to a felony and misdemeanor crime on May 3, 2016. He was ultimately sentenced to five years in state prison on August 9, 2016. Shields was then transferred to and booked into the Dane County Jail on September 30, 2016, at which time he underwent a pre-booking, medical screening. On the screening form, Shields disclosed that he had suffered from anxiety and depression in the past. In completing the form, Dane County medical staff also noted that Shields had a history of using Fluoxetine, an anti-depressant. Next, a mental health nurse completed a behavioral, health initial evaluation, which was performed in private. That nurse concluded treatment was not indicated at that time, although she educated Shields on how to request mental health care in the future. Finally, on October 2, 2016, a mental health provider verified Shields' prescription for Fluoxetine and started him on a regimen of 20 mg daily.

During the events relevant to this lawsuit, defendant Brittany Lindsley was working as an Advanced Practice Social Worker for Wellpath, LLC, a private health care provider contracted to provide medical and mental health services at the Dane County Jail. While still with Wellpath, she is currently working as a Licensed Clinical Social Worker licensed in good standing in the State of Wisconsin.

At all times material to this lawsuit, Lindsley was assigned to the first shift at the

---

defendant's proposed findings of facts, the court also notes that it reviewed plaintiff's opposition and considered any disputes raised.

Dane County Jail as a mental health counselor. In that role, Lindsley performed mental health assessments, suicide risk screenings and supportive therapy for inmates. During Shields' incarceration, Lindsley never provided formal counseling services to Shields; she could not prescribe medications or other forms of treatment. In fact, no medical or mental health provider had ordered Shields to undergo formal counseling treatment  Instead, Lindsley's sole, relevant role was to respond to a single, Sick Call Request that Shields submitted on October 27, 2016.

Whether an inmate was transferred out of his assigned cell block was a decision left to correctional staff. At all times material to this lawsuit, correctional staff did not permit inmates like Shields to be transported out of their cell block for *informal* medical or mental health discussions with staff, due to safety and security concerns. Instead, mental health staff met with inmates to perform a safety check or informally discuss any issues in the cell block area (without any other participants) or near the cell block door (again without any other participants).

Throughout October 2016, Shields submitted mental health requests that specifically asked to speak with a mental health professional about private matters and not through the food slot. After consulting with correctional officers, nurses responded to his requests in person, informing him that he could not be removed from his cell. In his brief in opposition, Shields confirms that he was denied the opportunity to talk about his mental health issues outside of his cell. The interactions he did have from his cell with mental health nurses are reflected in progress notes in plaintiff's medical record. (Def.'s PFOFs (dkt. #47) ¶¶ 30-66.) Those notes indicate that, on numerous occasions, Shields spoke

3

about his mental health concerns, confirmed he was compliant with his medication, and reported he was not experiencing suicidal or homicidal ideation or plans for self-harm. (*Id.*)

Defendant Lindsley's sole interaction with plaintiff was in response to his October 27, 2016, Sick Call Request, in which he wrote, "I would like to talk to mental health to discuss some personal confidential issues." (Wiesner Decl., Ex. A (dkt. #50-1) 43.) Specifically, Lindsley responded in writing the next day, "You were last seen on 10/27/16, please write back if still need to be seen." (*Id.*)

Beginning in November 2016, however, Shields became increasingly frustrated with not being removed from his cell for mental health consultations. (*Id.* ¶¶ 67-80.) The medical record notes that Shields was "agitated" and "uncooperative," and he eventually refused to speak with mental health staff. (*Id.* ¶¶ 72, 77.) Although the final, December 2016 medical note indicates that Shields was willing to talk with mental health staff again, it also states that he "reported no mental health concerns at this time." (*Id.* ¶ 81.)

OPINION

In its screening order, the court granted leave to plaintiff to proceed on both a Fourteenth Amendment due process claim and an Eighth Amendment deliberate indifference claim because it was still unclear whether he was a pretrial detainee or a convicted prisoner during the events at issue. (6/28/19 Op. & Order (dkt. #16) 3-4 (citing *Smith v. Dart*, 803 F.3d 304, 309–10 (7th Cir. 2015).) Now, the record reflects that Shields was a convicted prisoner and, therefore, the court considers his claims under the Eighth Amendment standard.

4

As set forth in the opinion and order screening plaintiff's claims to go forward, the Eighth Amendment affords prisoners a constitutional right to medical care. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To prove his claim of deliberate indifference under the Eighth Amendment, plaintiff must put forth sufficient evidence from which a reasonable jury could find that: (1) he had an objectively serious medical need; and (2) the defendant was deliberately indifferent to it. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008).

"A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). For purposes of summary judgment, defendant does not dispute that plaintiff suffered from an objectively serious medical need. Instead, defendant seeks summary judgment on the basis that she was not deliberately indifferent to that need.

As for the second element, a defendant must be "subjectively aware" of an inmate's serious medical need, meaning that she must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference constitutes more than negligent acts, or even grossly negligent acts, but can be something less than purposeful acts. *Id.* at 836. An act crosses over into deliberate indifference where (1) "the official knows of and disregards an excessive risk to inmate health or safety," or (2) "the official [is] both aware of facts from which the inference could be drawn that a

5

substantial risk of serious harm exists," and he or she draws that inference, yet deliberately fails to take reasonable steps to avoid it. *Id.* at 837.

Here, the record reflects that: (1) defendant Lindsley's only involvement in plaintiff's care was to a single request to be seen by mental health staff; and (2) Lindsley responded in writing that he had already been seen the day before -- the same day he submitted his request -- while encouraging him to write back if he still needed to be seen. There is obviously no basis for a reasonable jury to conclude that this interaction constituted deliberate indifference.

In fairness, plaintiff complains more generally about the Dane County Jail's mental health staff's refusal to see him outside of his cell. However, the record reflects that the decision to keep plaintiff in his cell for initial, informal mental health assessments was made by correctional officers, not Lindsley or any other, unidentified mental health professional, whether plaintiff described them generally in his complaint or not. The record also reflects that while plaintiff was treated for his anxiety and depression with medication, there was never a medical order for counseling or other mental health treatment that might have resulted in a more private interaction with mental health staff. Instead, defendant explains in her brief, the repeated visits to Shields' jail cell were informal wellness checks, during which Shields repeatedly stated his compliance with his medication and denied being suicidal, homicidal or otherwise at risk for self-harm or harm to other individuals. Regardless, even assuming plaintiff could pursue a complaint against the only remaining defendant in this action based on a general denial of private counseling sessions, a reasonable jury could not conclude that her actions constituted deliberate indifference,

6

since she could *not* have issued such an order as a social worker. Accordingly, the court must grant defendant's motion.

ORDER

IT IS ORDERED that:

1) The motion of defendant Brittany B. Koch (now known as "Brittany Lindsley") for summary judgment (dkt. #46) is GRANTED.

2) The clerk's office is directed to enter final judgment in defendant's favor.

Entered this 20th day of October, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge